**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

KEN ENJEH,[1]

CIVIL ACTION NO. 26-1417

VS.

SECTION P

JUDGE JERRY EDWARDS, JR.

WARDEN RICHWOOD CORRECTIONAL
CENTER, ET AL.

MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Petitioner Ken Enjeh,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 7].  For reasons below, the Court should grant Petitioner's request for release from custody.

## Background

Petitioner is a citizen of Cameroon.  She "entered the United States on or about January 13, 2025, through an unknown location.  She was encountered by United States Border Patrol and ultimately detained."  [doc. # 7, p. 1].

On August 6, 2025, an immigration judge ordered Petitioner removed from the United States but granted her withholding of removal to Cameroon.  Petitioner did not appeal the removal order.

---

[1] Petitioner's "A-Number" is 221-391-645.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Petitioner filed this proceeding on May 1, 2026.  [doc. # 1].  Citing *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), she claims that there is no significant likelihood of her removal in the reasonably foreseeable future.  *Id.* at 6.  She maintains that "ICE has not been able to effectuate [her] removal to any third country" and that she has "written to ICE but has had no response or updates."  *Id.* at 4.  She also states that she has not received any notice of a "third country for potential removal or even if any third country has been contacted."  [doc. # 8, p. 2].  She argues further:

> The last update dated May 23, 2026, is that there are no updates on third country removal. This is now nearly ten (10) months after Petitioner was granted withholding of removal from Cameroon.  Petitioner is therefore correct that there is no clear end in sight to her removal from the United States.

[doc. # 8, p. 2].

Respondents opposed the petition on May 28, 2026.  [doc. # 7].  Petitioner filed a reply on June 4, 2026.  [doc. # 8].

**<u>Law and Analysis</u>**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . .  or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

2

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

 "[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, she has been detained 278 days (or 9 months, 5 days) following her final order of removal.  In addition, she meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.

For over nine months, the Government has been unable to obtain a travel document for her.  She maintains that "ICE has not been able to effectuate [her] removal to any third country" and that she has "written to ICE but has had no response or updates." *Id.* at 4.  She has not

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

received any notice of a "third country for potential removal or even if any third country has been contacted." [doc. # 8, p. 2]. She contends further:

> The last update dated May 23, 2026, is that there are no updates on third country removal. This is now nearly ten (10) months after Petitioner was granted withholding of removal from Cameroon. Petitioner is therefore correct that there is no clear end in sight to her removal from the United States.

[doc. # 8, p. 2].

Respondents fail to rebut Petitioner's arguments. Respondents do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal.

Respondents attach the declaration of Supervisory Detention & Deportation Officer Wilton J. Tyler, who declares in part:

> 8) On or about August 22, 2025, a Deportation Officer (DO) reached out to the Detention and Deportation Officer (DDO) for updates on cases that were granted withholding of removal from Cameroon.
>
> . . . .
>
> 10) On or about October 2, 2025, the DO reached out to the DDO for updates on cases that were granted withholding of removal from Cameroon.
>
> 11) On or about November 28, 2025, the DO reached out to the DDO for updates on cases that were granted withholding of removal from Cameroon. The 90-day POCR was sent to the Supervisory Detention and Deportation Officer (SDDO) for review.
>
> . . . .
>
> 14) On or about January 8, 2026, the DO reached out to the DDO for updates on cases that were granted withholding of removal from Cameroon.
>
> 15) On or about January 9, 2026, third country removal referral was received and documented by the DDO.
>
> 16) On or about February 24, 2025, the DO reached out to the DDO for updates on cases that were granted withholding of removal from Cameroon.

4

17) On or about April 13, 2026, ERO emailed DDO for third country removal guidance.

18) On or about May 16, 2026, a follow up email was sent to DDO with request for status update on possible third country removals.

19) On or about May 23, 2026, the DDO advised that there were no updates on third country removal options.

[doc. # 7-1, pp. 2-3].

That ICE requested updates on six occasions, requested guidance, and then received no updates as of May 23, 2026 does not establish that removal is significantly likely to occur in the reasonably foreseeable future.  Likewise, that Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  Respondents essentially present only requests for updates and guidance unaccompanied by any indication of progress in over nine months along with no indication that progress will occur.  The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

Respondents have not even identified a third country for Petitioner's removal, much less made any efforts at securing a travel document for a specific country.  From the record, it appears that they have not even started the process of attempting to remove Petitioner.  And they do not state how long the process will take after identifying a specific country.  Yet, they still detain her.

Respondents contend: "This Petition should be dismissed, like the petitions in *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1365 (N.D. Ga. 2022) and *Nagib v. Gonzales*, 2006 WL 1499682 at p. 2.  [doc. # 7, p. 5].  In both cases, courts found that the aliens had not met their burdens because the only evidence of a good reason to believe there was no significant likelihood of a reasonably foreseeable removal was the time in detention and the assertion that the receiving

5

country had not yet issued travel documents." [doc. # 16, p. 10].  The undersigned expresses no opinion on the disposition of those cases, but it suffices that they are materially distinguishable. In *Fahim*, unlike here, the Government " sent an emergency travel document request to the Egyptian Embassy[,]" it flew "petitioner to the Egyptian Embassy . . . for an interview to try to move along the process" three months before he filed his habeas corpus petition, and the petitioner also had a "passport that would facilitate his return to Egypt" which he failed to produce.  *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1362 (N.D. Ga. 2002).  In *Nagib*, ICE had "formally requested travel documents" from the Sudanese Embassy, the embassy later advised a deportation officer that his travel document request was still pending, and the Sudanese government had in the past issued travel documents to Sudanese citizens.  *Nagib v. Gonzales*, 2006 WL 1499682, at *2 (N.D. Tex. May 31, 2006).

Respondents provide no evidence—or reasons to conclude—that  a travel document is forthcoming.[4]  They do not, for example, provide any evidence that they have made progress in

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal

obtaining travel documents, that they have been communicating with any country about

Petitioner's deportation, that any country has recently accepted others similarly situated to

Petitioner, that any country has an agreement or treaty with the United States affecting

Petitioner's removal, or that any country is willing to accept Petitioner.[5, 6]

Respondents cannot rest on bald assertions that removal is foreseeable without providing

sufficient supporting evidence.  "A theoretical possibility of eventually being removed does not

satisfy the Government's burden once the removal period has expired and the petitioner

establishes good reason to believe [that] his removal is not significantly likely in the reasonably

foreseeable future."  *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

Respondents even suggest that obtaining travel documents is beyond their control.  They

state specifically that the "processes for obtaining a temporary travel document from another

---

order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal.  While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

7

country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE." [doc. # 7, p. 4]. As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Ken Enjeh's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Richwood Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) notify Petitioner's counsel of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8] Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

---

[7] The undersigned finds no need to address any claim or request for relief not addressed herein.

[8] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody. The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 11th day of June, 2026.

 

_____
Kayla D. McClusky
United States Magistrate Judge